IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| **CHARLES L. HAYNES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:05-0820 |
| | ) | |
| **DR. TEODORO JIMENEZ and** | ) | |
| **PRIMECARE MEDICAL OF** | ) | |
| **WV, Inc.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On October 11, 2005, Plaintiff, acting *pro se* and formerly incarcerated at the Southern Regional Jail in Beaver, West Virginia, filed his Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[1] (Document No. 1.) By Standing Order entered on July 21, 2004, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

**FACTS AND PROCEDURE**

Plaintiff alleges that Defendants provided inadequate medical care during Plaintiff's incarceration at the Southern Regional Jail from February 15, 2000 until August 10, 2000. Plaintiff's Complaint states the following:

> I am entitled to the same quality of medical care whether I am incarcerated or not. I became incarcerated and Dr. Teodoro Jimenez became my primary caregiver. His

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

>standard of care was 'Medically Indifferent' from that that was expressed by the operating physician, Dr. J. Samuel Mitchener III, M.D., Phd. Dr. Teodoro Jimenez failed to follow the post-operative instructions given by Dr. Mitchener. These instructions were faxed to the Southern Regional Jail by Dr. Mitchener. The prison officials also 'DENIED' intentionally my access to medical care. [see exhibit #A, request from therapy to prison officials] This is a violation of the DUE PROCESS CLAUSE of the 14th Amendment for pretrial inmates and CRUEL and UNUSUAL PUNISHMENT under the 8th Amendment of the U.S. Constitution. Due to sub-standard care used by Dr. Jimenez, petitioner is unable to return to the work-force [see exhibit #1].

(Document No. 1, pp. 4-5.) Plaintiff contends Defendants' refusal to provide physical therapy as ordered by Dr. Mitchener resulted in the significant restriction of the range of motion in Plaintiff's right wrist and hand. Plaintiff seeks "damages in the amount of $250,000.00; punitive damages in the amount of $50,000.00; and loss of wages from the date of this evaluation until the present date at $11.40 per hour at 50 hours per week." (Document No. 1, p. 5.)

In late 1999, Plaintiff was involved in an incident leading to the laceration of his right wrist and hand. On December 3, 1999, Plaintiff underwent surgery to repair tendon lacerations to his right hand and wrist. Plaintiff's cast was removed on January 25, 2000, and the treating surgeon, Dr. Mitchener, prescribed physical therapy four times a week. Plaintiff attended physical therapy until his arrest on February 15, 2000.[2] (Document No. 1, p. 7.) After Plaintiff's incarceration, Defendant Jimenez allegedly determined that Plaintiff did not need physical therapy. Defendant Jimenez, however, prescribed and demonstrated exercises for Plaintiff to do with his hand.

---

[2] Plaintiff was arrested on charges of "Domestic Battery - Third or Subsequent Offense" and was transported to the Southern Regional Jail on February 15, 2000. On February 23, 2000, Plaintiff was arraigned in the Circuit Court of Greenbrier County before the Honorable Judge James Rowe. Plaintiff was subsequently convicted of the above charges and sentenced to one to three years in the state penitentiary. Plaintiff was transferred from the Southern Regional Jail to Southwestern Regional Jail on August 10, 2000. Plaintiff was temporarily housed at the Southwest Regional Jail until January 11, 2001, when Plaintiff was transferred to Huttonsville Correctional Center for the remainder of his sentence. (Document No. 24-6.)

(Document Nos. 1 and 24-6.)

On January 17, 2001, Plaintiff filed a Section 1983 action in United States District Court for the Southern District of West Virginia alleging the same facts as stated above. Plaintiff named the following individuals as defendants: (1) Stephen Canterbury, formerly the Executive Director of the West Virginia Regional Jail and Correctional Facility Authority; (2) Thomas Scott, the Administrator of the Southwestern Regional Jail, and J.D. Huppenthal, the Administrator of the Southern Regional Jail. Plaintiff alleged that the defendants were deliberately indifferent to his serious medical needs during the period of his incarceration at the Southern and Southwestern Regional Jails. Plaintiff asserted that the defendants' failure to provide physical therapy resulted in the significant restriction of the range of motion in his right wrist and hand. Plaintiff's action was disposed of through summary judgment on January 28, 2002. This Court reasoned that the undisputed evidence demonstrated that Defendants were not deliberately indifferent to Plaintiff's medical needs. (Document Nos. 24-6 and 24-7.)

On September 11, 2003, Plaintiff filed suit in the Circuit Court of Kanawha County against the above Defendants, Dr. Jimenez and PrimeCare Medical, alleging the same facts as above. (Document No. 24-8.) Plaintiff contended that he suffered permanent injury to his hand as a result of Defendants' negligent failure to provide proper physical therapy. (Id.) The Circuit Court addressed Plaintiff's complaint as alleging cruel and unusual punishment and medical negligence. On March 31, 2004, the Circuit Court granted Defendants' motion for summary judgment and dismissed Plaintiff's claims based upon the following: (1) The statute of limitations had expired because more than two years had passed since the alleged acts took place; (2) Plaintiff failed to file a notice of claim and screening certificate of merit as required by the Medical Professional Liability Act; and (3) The doctrine of collateral estoppel precluded Plaintiff from relitigating those issue


previously decided by the U.S. District Court.(Document No. 24-2.) Although the case was dismissed, Plaintiff sent Defendants a document that Plaintiff claimed to be a screening certificate of merit in December 2004. (Document No. 24-11.)[3] On January 10, 2005, Plaintiff appealed the decision of the Circuit Court of Kanawha County to the West Virginia Supreme Court of Appeals. (Document No. 24-13.) The appeal was refused by the West Virginia Supreme Court on June 29, 2005. (Document No. 24-14.)

On August 27, 2007, the Defendants, by counsel, filed a Motion for Summary Judgment with Memorandum in Support in the present case. (Document Nos. 24 and 25.) Defendants contend that Plaintiff's Complaint must be dismissed for the following reasons: (1) Plaintiff's claims are barred by the doctrines of *res judicata*, collateral estoppel, and the Full Faith and Credit Clause; (2) Plaintiff's Eighth Amendment and medical negligence claims are barred by the statute of limitations; (3) Plaintiff failed to serve Defendants with a proper screening certificate of merit as required by the West Virginia's Medical Professional Liability Act; and (4) Plaintiff's claim failed to establish that Defendants were deliberately indifferent to a serious medical need. (Document No. 24.)

On September 11, 2007, Plaintiff filed a Motion to Proceed alleging the same claims as above. Specifically, Plaintiff states that "no matter how the defendants draft or craft their defenses Dr. Teodoro Jimenez used an improper method of treatment, which has contributed to the plaintiff's life-long injury." Therefore, Plaintiff requests the undersigned grant his Motion to Proceed. (Document No. 26.)

On December 11, 2007, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the Defendant's Motion

---

[3] The undersigned notes that the alleged screening certificate of merit was merely Plaintiff's progress notes from the Robert C. Byrd Clinic. (Document No. 24-11.)

for Summary Judgment. (Document No. 28.) On January 7, 2008, Plaintiff filed his Response in Opposition to Defendant's Motion for Summary Judgment. (Document No. 29.) Plaintiff's Response merely states the following: "Dr. Teodoro's method of treatment for my injury was insufficient. The progress report marked as exhibit #1 reflects this." (Id.) Defendants filed a Reply on January 11, 2008, arguing that "Plaintiff utterly failed to address any of the issues raised in the Defendants' previously filed motion for summary judgment, or rebut the factual assertions made in said motion by affidavits and other exhibits." (Document No. 30.) On January 16, 2008, Plaintiff filed the following exhibits: (1) Copy of a letter dated September 12, 2000, from James Rowe to Patrick Via, Attorney at Law; (2) Inmate Grievance dated October 1, 2000, with response; (3) Inmate Grievance dated November 29, 2000, with response; and (4) Copy of a fax from Dr. Mitchener prescribing physical therapy "4 x per week by patient at home/jail." (Document No. 31.)

## THE STANDARD

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an

essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

**I.**     *Res judicata*, **collateral estoppel, and the Full Faith and Credit Clause.**

The preclusive effects of the doctrines of *res judicata* and collateral estoppel are designed to promote judicial economy, encourage reliance on judicial decisions, and relieve parties from the expense of multiple lawsuits. See Parklane Hosiery Co. Inc. v. Shore, 439 U.S. 322, 326, 99, S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); Wright & Miller, § 131.12[4][a]. "Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of

action." Young-Henderson v. Spartanburg Area Mental Health Center, 945 F.2d 770, 773 (4th Cir. 1991)(*quoting*, Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Collateral estoppel "precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." In re McNallen, 62 F.3d 619, 624 (4th Cir. 1995).

**A.** *Res Judicata***:**

The doctrine of *res judicata* applies if the follow elements are satisfied: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and present suit; and (3) an identity of the parties or their privies." Pueschel v. U.S., 369 F.3d 345, 354-55 (4th Cir. 2004). The Court will consider the above-referenced elements in determining whether the prior judgment entered by the United States District Court for the Southern District of West Virginia or the Circuit Court of Kanawha County[4] precludes Plaintiff's above cause of action contending that Defendants failed to provide adequate medical care.

First, the undersigned finds that there was a final judgment on the merits in both the Federal and State cases. In the Federal action, Magistrate Judge Mary Stanley submitted her proposed findings and recommendation on December 19, 2001. (Document No. 24-6.) On January 3, 2002, Plaintiff timely filed objections to the findings and recommendation. Judge Faber adopted the findings and recommendations of the Magistrate Judge Stanley and granted defendant's motion for summary judgment on January 28, 2002. (Document No. 24-7.) In the State action, defendants'

---

[4] Under 28 U.S.C. § 1738, federal courts must give full faith and credit to state court judgments.

motion for summary judgment was granted on March 31, 2004. (Document No. 24-2.) On January 10, 2005, Plaintiff filed a Petition for Appeal with the West Virginia Supreme Court. (Document No. 24-13.) Plaintiff's appeal was refused by West Virginia Supreme Court on June 29, 2005. (Document No. 24-14.)

Next, the Court finds that the cause of action in both the earlier suits and the present suit are the same. Lawsuits are deemed to have the same cause of action if the two suits "arise from the same transaction or series of transactions or the same core of operative facts." Harnett v. Billman, 800 F.2d 1308, 1312 n. 1 (4th Cir. 1986); *also see* Sullivan v. Easco Corp., 662 F. Supp. 1396, 1408 (1987)("Two causes of action are deemed the same for the purposes of *res judicata* only if the same evidentiary facts would support both actions."). Identical to Plaintiff's prior suits, Plaintiff bases his present suit upon the alleged medical negligence or deliberate indifference to his serious medical needs. (Document Nos. 24-5 and 24-8.) As in the prior suits, Plaintiff claims that he did not receive proper physical therapy even though Dr. Mitchener allegedly prescribed physical therapy to continue during Plaintiff's incarceration. (Id.) Plaintiff again asserts that the lack of physical therapy resulted in the significant restriction of the range of motion in his right hand and wrist. (Id.) Therefore, the undersigned finds that Plaintiff's causes of action in the Federal and State cases are the same as his cause of action in the present case.

Finally, the undersigned considers the identity of the parties or their privies. The Court finds that the State action and the present action involve identical parties. (Document No. 24-8.) The prior Federal action, however, involved different defendants. (Document No. 24-5.) Therefore, the Court must consider whether the prior defendants were in privity with the present defendants. To be in privity with a party to the previous litigation, the nonparty must be "so identified in interest with a

party to former litigation that he represents precisely the same legal right in respect to the subject matter involved. Jones v. SEC, 115 F.3d 1173, 1180 (4th Cir. 1997), *citing* Nash County Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 493 (4th Cir. 1981). In the prior Federal action, Plaintiff named the following defendants: Stephen Canterbury, former Executive Director of the West Virginia Regional Jail and Correctional Facility Authority; Thomas Scott, the Administrator of the Southwestern Regional Jail; and J.D. Huppenthal, the Administrator the Southern Regional Jail.(Document No. 24-5.) In the present case, PrimeCare and Dr. Jimenez are named as defendants. (Document No. 1.) The undersigned notes that the Regional Jail and Correctional Authority contracts with PrimeCare to provide health care in the regional jails. Similarly, Dr. Jimenez is a contract physician with Primecare.[5] Therefore, the undersigned finds that privity exists between the defendants in the prior Federal action and the present Defendants.

Based on the foregoing, the undersigned finds that Plaintiff's present action is barred by the doctrine of *res judicata*. The prior lawsuits (1) were final judgments on the merits, (2) involved the same causes of action, and (3) involved the same parties or their privies. The Court further finds that Plaintiff had a full and fair opportunity to litigate the claims decided in the Federal and State court cases. Plaintiff is merely attempting to reassert claims that have already been adjudicated in Federal and State court.

### B. **Collateral Estoppel:**

Even if Plaintiff's suit was not precluded by the doctrine of *res judicata*, the undersigned finds that the doctrine of collateral estoppel applies. In determining whether to apply the doctrine

---

[5] In Plaintiff's prior suit, Magistrate Judge Stanley found the following: "The evidence demonstrates that Dr. Jimenez, Plaintiff's treating physician, believed that outside physical therapy was unnecessary." (Document No. 24-6, p. 11.)

of collateral estoppel, the Court must weigh the following factors:

> 1. The party against whom the estoppel is asserted must have been a party or in privity with the party in the prior action.
>
> 2. There must have been a final determination of the merits of the issues to be collaterally estopped.
>
> (3) The issues decided in the prior action must have been necessary, material, and essential to the prior case.
>
> (4) The party against whom the estoppel is to be applied must have had a full and fair opportunity to litigate the issues.
>
> (5) The issues in the prior litigation must be identical to the issues sought to be estopped.

See Parklane Hosiery, 439 U.S. at 331, 99 S.Ct. at 651; Polk v. Montgomery County, Maryland, 782 F.2d 1196 (4th Cir. 1986). The Court will consider the five above-referenced factors in determining whether the judgment entered by the Southern District of West Virginia precludes Plaintiff from contending that Defendants rendered inadequate medical care. The undersigned finds that (1) Plaintiff clearly was a party in the prior action, (2) the District Court entered final judgment upon the issue, (3) the issue was necessary, material, and essential to the prior case, (4) Plaintiff had a full and fair opportunity to litigate the issue, and (5) the issue was identical to the issue sough to be estopped. Specifically, the issue sought to be estopped is whether Plaintiff received inadequate medical care during his incarceration, which resulted in a violation of his rights under the Eighth and Fourteenth Amendments. From the record before the Court, it is clear the District Court's decision addressed the above issue by finding that there was no evidence of deliberate indifference to Plaintiff's serious medical conditions. (Document No. 24-7.) Therefore, the undersigned finds that collateral estoppel also precludes Plaintiff's present action.

## II.     Statute of Limitations.

Assuming Plaintiff's claims could survive the doctrines of *res judicata* and collateral estoppel, Plaintiff's claims would be barred by the statute of limitations. The applicable statute of limitations for an action filed pursuant to 42 U.S.C. § 1983 is based upon the state's limitations period applicable to a personal injury action. Owens v. Okure, 488 U.S. 235, 249, 109 S.Ct. 573, 581, 102 L.Ed.2d 594 (1989). Under West Virginia law, the statute of limitations for a personal injury action is two years.[6] W. Va. Code § 55-2-12. According, a two-year statute of limitations applies to this action. The time of accrual for a Section 1983 action is determined by federal law. Nassim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995), *cert denied*, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id.

In the present case, Plaintiff alleges that Defendants were deliberately indifference to his serious medical condition during his incarceration at the Southern Regional Jail between February and August, 2000. Based upon a review of the record, it is clear that Plaintiff's cause of action accrued no later than January 17, 2001. On January 17, 2001, Plaintiff filed a prior Section 1983 action with the Southern District of West Virginia alleging deliberate indifference to his serious

---

[6] West Virginia Code § 55-2-12 provides the following:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

11

medical condition based upon the same facts as the present case. Therefore, the undersigned finds Plaintiff's case is barred by the two-year statute of limitations period because Plaintiff did not bring this action until October 11, 2005, and the statute of limitations period began to accrue no later than January 17, 2001.

### III. West Virginia Medical Professional Liability Act [WVMPLA].

Next, Defendants argue that Plaintiffs' Complaint should be dismissed because Plaintiff failed to timely and properly file a screening certificate of merit pursuant to the WVMPLA.[7] Although the undersigned agrees that Plaintiff failed to comply with the prerequisites set forth in the WVMPLA, this is improper grounds for dismissal. The undersigned finds that claims of

---

[7] West Virginia Code § 55-7B-6 provides the following in pertinent part:

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

negligence are not cognizable under Section 1983. Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986)("We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to, life, liberty, or property." (Emphasis in decision.)); Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995)("[N]egligent deprivations of life, liberty, or property are not actionable under 42 U.S.C. § 1983 . . .."). To the extent Plaintiff is basing his claim upon allegations of medical negligence, his claim cannot be construed to implicate a constitutional right for the violation of which relief can be granted under Section 1983 and must be dismissed.

**IV.    Eighth/Fourteenth Amendment Claims.**

Assuming Plaintiff's Complaint could survive all of the above and viewing the facts in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law. When a person is in custody as a pretrial detainee, his claims are evaluated under the Due Process Clause of the Fourteenth Amendment.[8] Hill v. Nicodemus, 979 F.2d 987, 990 (4th Cir. 1992). The standard is the same in evaluating claims of constitutionally inadequate medical care under the Fourteenth and the Eighth Amendments. See Natale v. Camden County Corr. Facility, 318 F.3d 575, 581-582 (3d Cir. 2003). As a general matter, prohibited punishments include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(*quoting* Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while

---

[8] Plaintiff was a pre-trail detainee during part of his confinement and treatment at the Southern Regional Jail.

imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *See also* Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), *quoting* Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), *citing* Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id.

at 298, 111 S.Ct. 2321 (*citing* Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(*quoting* Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). *See also* White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") The touchstone is the health of the inmate. Plaintiff in this case must therefore allege in the first place and eventually establish a "sufficiently serious" deprivation of medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim.

To establish the subjective component of deliberate indifference, an inmate must allege and prove each defendant's consciousness of the risk of harm to the inmate. *See* Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, an inmate must establish that the prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. An inmate may satisfy the subjective component of the Section 1983 standard by showing that prison officials' delay in providing medical treatment caused unnecessary pain or the worsening of his condition. Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990)("Failure to respond to an inmate's known medical needs raises an inference that there was deliberate indifference to those needs."); Cameron v. Sarraf, 128 F.Supp.2d 906, 911-12 (E.D.Va. 2000)("Yet, it is equally clear that mere negligence or delay is not

15

sufficient to establish deliberate indifference.").

In view of the foregoing, the undersigned assumes that Plaintiff's medical conditions are objectively serious. Respecting the second prong of the standard, it is clear that Plaintiff cannot establish that Defendants were deliberately indifferent to Plaintiff's serious medical needs. It is evident from the record that Plaintiff received timely and proper physical therapy for his hand and wrist. Plaintiff was examined by Defendant Jimenez on numerous occasions during Plaintiff's incarceration. (Document No. 24-17.) Defendant Jimenez "prescribed an exercise routine for Mr. Haynes to perform as physical therapy" and "demonstrated the exercises to Mr. Haynes." (Id.) Defendant Jimenez stated that in his professional opinion he believed "the exercise routine was sufficient for Mr. Haynes' medical condition" and "it was not medically necessary for Mr. Haynes to receive physical therapy outside the facility or by a licensed physical therapist." (Id.) Additionally, the fax from Dr. Mitchener prescribing physical therapy stated "4x per week by patient at home/jail." (Document No. 31, p. 5.) The undersigned finds that Dr. Mitchener's fax indicates Plaintiff could adequately perform physical therapy exercises at his home or jail without the aid of a physical therapist. No deliberate indifference is evident. Accordingly, it appears beyond doubt that Plaintiff can prove no set of facts in support of the requisite second prong of the Eighth Amendment standard.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion to Proceed (Document No. 26.), **GRANT** Defendant's Motion for Summary Judgment (Document No. 24.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have thirteen days from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

ENTER: January 31, 2008.

*R. Clarke VanDervort*
R. Clarke VanDervort
United States Magistrate Judge

17